UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>MCQUILLEN PLACE COMPANY, LLC,<br><br>Debtor.<br><br>───────────────<br><br>MCQUILLEN PLACE COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST SECURITY BANK & TRUST CO.,<br><br>Defendant. | Chapter 7 Bankruptcy<br>Case No. 19-00507<br><br><br><br>Adversary Case No. 19-09035<br><br><br>**MOTION TO DISMISS FOR<br>FAILURE TO STATE A CLAIM<br>(F.R.B.P. 7012(b)(6))[1]** |

COMES NOW Defendant First Security Bank & Trust Co. ("*First Security*") and hereby moves to dismiss the Complaint of McQuillen Place Company, LLC for Equitable Subordination of the Lien of First Security Bank & Trust Co. (the "*Complaint*"), pursuant to rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and in support thereof states as follows:

**I.      The Pleading Rules Require That a Complaint Alleging Fraud Meet a Heightened Standard Beyond Merely Being Plausible on its Face**.

To avoid dismissal under Bankruptcy Rule 7012(b)(6), a complaint must, at a minimum, contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). In addition, a plaintiff must plead enough factual allegations to

---

[1] By filing this Motion, the Movant does not waive and instead does preserve and reserve any and all other argument, theory, remedy, right, etc.

"raise a right to relief above the speculative level," in other words to one "that is plausible on its face" *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim is plausible on its face when the allegations allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged and there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a plaintiff alleges "facts that are 'merely consistent with' a defendant's liability," the complaint is insufficiently pled. *See id.* (citing *Twombly* at 557). When considering whether a complaint meets the plausibility standard, the Court must accept all factual allegations as true, but the Court "is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (quoting *Iqbal* at 678).

Accordingly, speculative, conclusory, or nonspecific allegations are insufficient. *Cooper v. Schriro*, 189 F.3d 781, 784–85 (8th Cir. 1999). Therefore, "in considering a motion to dismiss, courts . . . reject conclusory allegations of law and unwarranted inferences." *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("We do not, however, blindly accept the legal conclusions drawn by the pleader from the facts.") (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *5 Charles A. Wright et al.*, Federal Practice and Procedure §1357, at 595–97 (1969)).

Additionally, claims for fraud and negligent misrepresentation must be set forth under the heightened fact pleading standard required by rule 9(b) of the Federal Rules of Civil Procedure. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346,353 (8th Cir. 2011). Specifically, to support an allegation of fraud, facts such as time, place, content, identity, and "what was given up" must be pled. *E.g.*, *Weimer v. International Flavors & Fragrance*, 240 F.R.D. 431, 437 (N.D. Iowa

2007) (citations omitted). Thus, the pleading standard for the Complaint here is much higher than the "usual" sufficiency requirements because the Complaint pleads fraud. *See, e.g.*, Compl. at ¶115.

Last but not least, a plaintiff is "bound by [the] exposition" of the facts it sets forth in its complaint. *Romine v. Acxiom Corp.*, 296 F.3d 701, 706 (8th Cir. 2002). Thus, a plaintiff can "plead [itself] out of court" if the allegations of its complaint, or the documents on which it relies to establish the purported fraud, establish that the plaintiff cannot plausibly establish its claim. *Baker v. John Morrell & Co.*, 266 F. Supp. 2d 909, 922 (N.D. Iowa 2003), *aff'd*, 382 F.3d 816 (8th Cir. 2004) (citing, *inter alia, N. Tr. Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) ("a party 'can plead himself out of court by . . . alleging facts [that] . . . demonstrate that [it] has no legal claim'")); *see also OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 807 (8th Cir. 2017).

## II. Equitable Subordination Is an Extraordinary Remedy that Requires Inequitable Conduct Causing Harm to Other Creditors and May Not Be Applied so as to Contravene the Bankruptcy Code.

The Complaint in its caption sought "equitable subordination" and then cited to section 510 of title 11 of the United States Code (the "*Bankruptcy Code*"). Compl. pg. 1. The Plaintiff alleges "the statutory predicates for the claims brought in this Adversary Proceeding are [Bankruptcy Code §] 510(c)." Compl. ¶4. Lastly, the relief sought was entry of an order "subordinating all liens, claims and encumbrances of [First Security] in any asset of the Debtor to a priority in distribution below that of all claim and interest holders in and of the Debtor, including, but not limited to, those of the unsecured creditors and the owners of the Debtor's equity." Compl. pg. 32. In sum, the Complaint relies on Bankruptcy Code §510(c).

In that light, the Supreme Court has instructed that equitable subordination is governed by federal law, not state law. *Am. Sur. Co. v. Sampsell*, 327 U.S. 269, 272 (1946) (noting "that federal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors" and principles of subordination). Accordingly, equitable subordination is appropriate only if all three of the following conditions are present:

   a. Inequitable conduct on the part of the lender;

   b. Unfair advantage or injury caused by the inequitable misconduct; and

   c. Subordination available without running afoul of other Code provisions.

*In re M&S Grading, Inc.*, 541 F.3d 859, 866 (8th Cir. 2008). Crucially, equitable subordination is "an extraordinary remedy and is rarely granted." *In re Diwan, L.L.C.*, 2013 WL 8351981, at *5 (Bankr. S.D. Iowa 2013) (Shodeen, J.). Naturally, if any of the three equitable subordination elements are not satisfied, then equitable subordination is inappropriate and the requested relief must be denied. *In re Equip. Equity Holdings, Inc.*, 491 B.R. 792, 842 (Bankr. N.D. Texas 2013). With respect to a claim, it may only be subordinated to below or on par with other creditors' claims, but not subordinated to below or on par with equity interests. *In re Rich Capitol, LLC*, 436 B.R. 224, 235 (Bankr. S.D. Fla. 2010) (noting that "[t]here is no provision for the subordination of a claim to an interest").

Importantly, the mere existence of a fraudulent scheme or inequitable conduct will not require equitable subordination of a claim, unless the improper conduct resulted in actual harm to creditors. *Kansas City Journal-Post Co.*, 144 F.2d 791, 802–03 (8th Cir. 1944) (limiting equitable subordination to defendant's "withdrawal of the $99,000 new working capital from

the corporation's treasury," who otherwise committed no fraud on the general creditors); [2] *accord Comstock v. Grp. of Inst. Inv'rs*, 335 U.S. 211, 229 (1948); *In re Diwan, L.L.C.*, 2013 WL 8351981, at *4 (noting that "the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the" party whose claim would be equitably subordinated); *In re Kober*, 1988 WL 1571436, at *2 (Bankr. S.D. Iowa 1988) (Hill, J.). The focus of the inquiry therefore is on the issue of harm suffered by the creditors of the debtor, not necessarily harm to the debtor itself. *In re Multiponics, Inc.*, 622 F.2d 709, 721 (5th Cir. 1980).

An equitable subordination complaint is insufficient if it merely alleges that because of a lender's refusal to participate in a meaningful meeting, the debtor was forced to file Chapter 11. *In re 80 Nassau Associates*, 169 B.R. 832 (Bankr. S.D.N.Y. 1994).[3] This is so because the mere filing of a bankruptcy petition, without more, is a legally insufficient allegation of injury to satisfy the requirements of equitable subordination. *Id.* at 843. This requirement is "even more compelling in single asset real estate cases" because "[f]requently, the debtor in [such cases] lacks equity in the property, cannot service the secured debt, and files a bankruptcy petition to prevent or delay a foreclosure." *Id.* at 843 n. 9. The secured creditor's liquidation of valid lien rights … does not injure the creditor body." *Id.* at 843 n. 9.

The Debtor here resembles the Debtor in *80 Nassau*, as this Court, after a contested in-court evidentiary hearing, found the following facts:

[2] While *Kansas City Journal-Post* was decided before Bankruptcy Code §510(c) was codified by the 1978 Bankruptcy Code, "Congress intended that [the principles of equitable subordination] be defined by existing case law. Hence, pre-Code cases interpreting the doctrine remain authoritative." *In re 80 Nassau Assoc.*, 169 B.R. 832, 836 n. 3 (Bankr. S.D.N.Y. 1994) (citations omitted).

[3] The *80 Nassau* Complaint alleged a bank engaged in inequitable conduct that caused the Debtors to file Chapter 11 petitions. 169 B.R. at 835. Specifically, "they charge that [the bank] . . . lulled [the Debtor] into the belie[f] that if they paid certain real estate taxes and other expenses, [the bank] would meet with the Debtors to discuss the restructuring of the mortgage obligations. Instead, after the Debtors . . . paid these obligations and also provided certain financial information, [the bank] filed a foreclosure action. This left the Debtors with no choice but to file their Chapter 11 petitions." *Id.* Eventually, "the Court [held] that the Debtors ha[d] failed to allege either the type of conduct or injury that would warrant equitable subordination." *Id.*

The Debtor's primary asset is real property in Floyd County, Iowa. . . . The property is known as McQuillen Place Condominiums . . . . The owners of McQuillen Place Company, LLC are Mr. Thomson (60%) and James Gray (40%).

\*\*\*

Thomson sought a loan from First Security; however, the Bank declined due to his inexperience with the type of project. He then sought other financing through other lenders throughout the United States and chose CRBT [Cedar Rapids Bank & Trust] . . . . CRBT asked First Security if it would participate in the loan. First Security agreed to participate, and CRBT was the "lead bank."

\*\*\*

First Security eventually grew concerned with the progress of the construction and sought more control. CRBT agreed to assign the loan to First Security. In July 2018, after First Security took over the loan, it held a mediation with Debtor. They reached an agreement on a new payment plan for the first mortgage.

First Security is now the holder of a claim against Debtor which is secured by a Construction Mortgage and a Promissory Note dated December 31, 2014.

\*\*\*

In 2014, a groundbreaking was held for the building, but construction did not start until 2015. Construction eventually came to a halt in July 2017 with the project at 90 percent completion.

\*\*\*

Before bankruptcy, the mortgage payments fell behind, and First Security filed a mortgage foreclosure action.

*In re McQuillen Place Company, LLC*, 609 B.R. 823, 826 (Bankr. N.D. Iowa 2019). Application

of the equitable subordination principles leads to the conclusion the Complaint was

insufficiently pled. The following arguments support this contention.

**III. While the Complaint May Adequately Allege Inequitable Conduct, it Does Not Adequately Allege Harm to Creditors or Establish that Application of Equitable Subordination Would Be Harmonious with the Bankruptcy Code**.

Solely for purposes of this Motion and for no other purposes, and consistent with application of familiar standards of rule 12(b)(6) of the Federal Rules of Civil Procedure, First Security assumes *arguendo* that the Complaint sufficiently pleads the first element of equitable subordination, *viz.*, inequitable conduct or fraud. However, First Security submits that the Complaint did not sufficiently plead the other two elements that are required to sustain a claim for equitable subordination.

With respect to the third element, *viz.*, application of equitable subordination must not be inconsistent with the provision in the Bankruptcy Code, the Complaint is remarkably silent. The Complaint does not, even in any boiler-plate conclusory fashion, allege the third requisite element. Thus, the Complaint is insufficiently pled, and must be dismissed summarily. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 562 (complaint must contain either direct or inferential allegations respecting *all the material elements* necessary to sustain recovery under the alleged legal theory).

As to the second element, *viz.*, that there must be some unfair advantage or injury, the focus of the inquiry is injury to the creditors. *E.g.*, *In re Diwan, L.L.C.*, 2013 WL 8351981, at *4 (noting that "the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the" party whose claim would be equitably subordinated). The Complaint is woefully insufficient because, while replete with allegations that the *Debtor* suffered injury, it largely omits allegation of injury to the creditors. The Complaint alleges that:

¶69: "The Debtor has been injured…."

¶123: "The Debtor suffered economic injury…."

¶146: "The Debtor has been damaged…."

¶180: "The Debtor has been injured…." and

¶193: "The Debtor has been injured…."

The only allegation, which is also general and conclusory, of any injury allegedly suffered by creditors is that the "failure to disclose such information to the Debtor resulted in an increase in the Debtor's exposure to subrogation claims, to the *detriment of creditors*."[4] Compl. ¶118 (emphasis added). Yet *not one* such creditor was identified. Likewise, the amount of the creditors' damage was not even alleged. As the Complaint is based on fraud, it must adhere to the heightened pleading standard, which it fails to do.

Viewed in the light most favorable to the Plaintiff, this Court or First Security does not know which creditor was allegedly harmed or how much was the creditor harmed. At most, this Court or First Security is only provided with *one* conclusory and nonspecific 3-word allegation that inequitable conduct resulted in "detriment to creditors," without any specific fact, such as which creditor was harmed or how much the creditor was harmed. *Cf. Cooper v. Schriro*, 189 F.3d at 784–85 (noting that speculative, conclusory, or nonspecific allegations are insufficient).

---

[4] In fact, the allegation at ¶118 is contrary to Bankruptcy Code §509(c), which specifically states the co-debtor's claim is subordinated to the primary creditor's claim. *See In re White Trailer Corp.*, 266 B.R. 390, 394 (Bankr. N.D. Ind. 2000) ("To the extent the codebtor actually pays the primary creditor . . . the codebtor's claim may be allowed . . . by way of . . . subrogation through §509(a). Nonetheless, any distribution on the codebtor's claim must be subordinated until the primary creditor's claim is paid in full" pursuant to §509(c).). In other words, the mere presence of subrogated claims (if any) should make no difference to the claims of other creditors, until and unless First Security's claim is paid in full. Surely everyone in the underlying Bankruptcy Case agrees there are not enough assets to pay First Security's claim in full. Thus, the subordinated subrogation claims will never be paid anyway. By operation of §509(c), therefore, an "increase" of subrogated claims cannot possibly be "to the detriment of creditors."

Most importantly, the singular allegation of harm to creditors is with regards to non-disclosure of information that deals with the Iowa Economic Development Authority (the "*IEDA*") and EZ loan rules, *viz.*, somehow the rules were not explained to the Debtor. *See, e.g.*, Compl. ¶¶102, 105, and 112. But it was Cedar Rapids Bank & Trust ("*CRBT*") that had the "vast experience and expertise in transactions involving economic development assistance from the State of Iowa." Compl. ¶84. *Nothing* in the Complaint alleges *First Security* having any expertise.

Indeed, the Complaint alleged CRBT "had acted as lender on numerous projects . . . [that] had, like the Debtor, depended on complex IEDA assistance." *Id.* at ¶28. Nowhere in the Complaint are there any allegations that First Security had any expertise in procuring loans from IEDA or the State of Iowa, nor are there any allegations that First Security represented to the Debtor that First Security had any expertise. Instead, the Complaint alleged merely that CRBT had the requisite expertise, and CRBT allegedly failed to use its expertise to help the Debtor.

As such, the Complaint is completely devoid of any allegation of fraud by First Security or any reliance by the Debtor on First Security, and in the context of the second equitable subordination element, there is no allegation that any conduct by First Security harmed any creditor. And indeed even though the Complaint alleged First Security somehow improperly induced Robert Thomson, Charles Thomson, and Amelia Management to grant guarantees, those actions by First Security only led to "[t]he Debtor [being] injured." Complaint at ¶69. Notably, the Complaint did not assert Charles Thomson, Robert Thomson, or Amelia Management was injured.

In sum, the Complaint simply failed to allege First Security in any form or fashion acted to harm either the general creditor body or specific creditors. Hence, the Complaint is fatally flawed, is insufficient to sustain an equitable subordination theory, and must be dismissed.

**IV.    The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Because it Does Not Adequately Allege All Material Elements of Equitable Subordination or Meet the Heightened Pleading Standard Necessary for Fraud Claims.**

A complaint must allege all material elements of a claim that rises above the speculative level so as to be plausible on its face and alleges more than a sheer possibility of unlawful conduct. While the Court must accept factual allegations as true, legal conclusions couched as factual allegations do not bind the Court. A complaint alleging fraud must support the allegations with facts such as time, place, content, and identity.

Here, the Complaint is silent as to the third element of equitable subordination, rendering it defective on that alone. However, the Complaint also fails to adequately allege the second element of equitable subordination because the sole allegation of harm to creditors is that certain conduct resulted in "detriment to creditors." It does not identify the creditors or allege the actual harm they suffered. It does not articulate when or where or how such detriment occurred, but is instead a speculative, conclusory, nonspecific allegation that is insufficient. Accordingly, the Plaintiff fails to state a claim upon which relief can be granted because two of the three elements are not satisfied.

WHEREFORE, First Security respectfully prays this Court enter and enroll an Order dismissing this Complaint with prejudice.

Date: July 28, 2020.

/s/ Eric J. Langston
Eric W. Lam, AT0004416
Eric J. Langston, AT0014001
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel: 319-366-7641; Fax: 319-366-1917
elam@simmonsperrine.com
elangston@spmblaw.com


/s/ Randall Nielsen
Randall E. Nielsen
Larry S.Eide
PAPPAJOHN, SHRIVER, EIDE & NELSEN P.C.
103 East State Street, Suite 800
P.O. Box 1588
Mason City, IA 50402-1588
Tel: 641-423-4264; Fax: 641-423-3145
nielsen@pappajohnlaw.com
eide@pappajohnlaw.com

ATTORNEYS FOR FIRST SECURITY BANK
& TRUST CO.

**Certificate of Service**

The undersigned certifies, under penalty of perjury, that on this 28th day of July 2020, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties listed below:

| | |
|---|---|
| J.D. Hass | Eric J. Langston |
| Larry Eide | Eric W. Lam |
| L. Ashley Zubal | |

/s/ Wendi C. Scheer